# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DAWN MANKER,

Claimant,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

Respondent.

No. 16 C 10704

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Dawn Manker ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7.] The parties have filed cross-motions for summary judgment [ECF Nos. 16 and 23] pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c) and 405(g). For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 16] is granted, and the Commissioner's Motion [ECF No. 23] is denied. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] Nancy A. Berryhill is substituted for her predecessor Carolyn W. Colvin pursuant to Federal Rule of Civil Procedure 25(d).

# I. PROCEDURAL HISTORY

On September 22, 2009, Claimant filed her claim for DIB, alleging the onset of her disability as August 1, 2005. (R. 137.) Following a denial by an Administrative Law Judge ("ALJ"), the Social Security Administration ("SSA") Appeals Council granted Claimant's request for review on May 28, 2011 and remanded Claimant's application backed to the ALJ. (R. 156–57.) A second denial of benefits was issued on February 13, 2015. (R. 159–80.) The Appeals Council again granted Claimant's request for review and again remanded the claim on May 5, 2015. (R. 188–89.) On October 13, 2015, Claimant was represented by counsel and appeared and testified at a hearing before a new ALJ. (R. 38–79.) The ALJ also heard testimony from medical experts Gilberto Munoz, M.D., and Steven Sutherland, Ph.D., and vocational expert ("VE") Aimee Mowery. (*Id.*)

On January 8, 2016, the ALJ denied Claimant's claim for DIB, based on a finding that she was not disabled under the Act. (R. 12–30.) The opinion followed the five-step evaluation process required by Social Security Regulations ("SSR").[2] 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since her alleged onset date of August 1, 2005, through her date last insured of December 31, 2010. (R. 14.) At step two, the ALJ found that Claimant had the severe impairments of obesity, degenerative joint disease of the shoulders, hands, and knees, asthma, sleep apnea, irritable bowel syndrome ("IBS"), and status post work injury. (*Id.*) At step three, the ALJ found that through the date last insured, Claimant did not have an impairment or combination of

---

[2] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

impairments that met or medically equaled the severity of one of the listed impairments in 20

C.F.R. Part 404 Subpart P., Appendix 1. (R. 16.)

The ALJ then found Claimant had the residual functional capacity ("RFC")[3] to perform

sedentary work, except:

> She can never climb ladders, ropes, or scaffolds and occasionally climb ramps and stairs. She can occasionally stoop, kneel, crouch, and crawl. She can occasionally reach overhead with the right upper extremity. She is able to tolerate frequent exposure to dust, fumes, odors, gases, and poor ventilation. She must avoid exposure to unprotected heights and to dangerous moving machinery/moving mechanical parts. She must not be subject to a position which requires on the job driving/commercial driving. She must not be subject to a position where she must search for a restroom or would not have ready access to a restroom.

(R. 17.) Based on this RFC, the ALJ determined at step four that through the date last insured, Claimant was capable of performing her past relevant work as a customer service representative. (R. 29.) Therefore, the ALJ found that Claimant had not been under a disability from August 1, 2005, through December 31, 2010, the date last insured. (R. 30.) The Appeals Council declined to review the matter on September 17, 2016, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v.*

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

*Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 42 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

Claimant alleges a number of errors on appeal. First, Claimant contends that the RFC determination is erroneous and not supported by substantial evidence. [ECF No. 16, at 9–20.] Second, Claimant argues that the ALJ improperly assessed her subjective symptom statements and credibility. (*Id.*) Finally, Claimant asserts that the ALJ erred at step four in concluding that Claimant could perform the duties of her past relevant work. (*Id.*)

As an initial matter, the Court notes that the ALJ's opinion primarily is a lengthy recitation of Claimant's medical records and contains very little formal analysis. As a result, the

Court's issue with the ALJ's opinion in this case has less to do with the medical facts that are recited than it does with the analysis—or lack thereof—performed by the ALJ. *See Erwin v. Astrue*, No. 11 CV 1555, 2012 WL 3779036, at *8 (N.D. Ill. Aug. 30, 2012) ("Summarizing medical evidence is no substitute for actual analysis of medical evidence."). Accordingly, the Court's primary focus here is "on the ALJ's failure to analyze the medical information and adequately articulate how the ALJ used that information to synthesize [his] conclusions, which constitutes reversible error." *Betts v. Colvin*, 2016 WL 1569414, at *1 (N.D. Ill. Apr. 19, 2016).

A. **The RFC Determination**

The Court begins with, and will focus mostly on, Claimant's argument that the RFC determination was erroneous and not supported by substantial evidence. Claimant asserts that the ALJ (1) failed to properly account for her bathroom breaks, (2) failed to include limitations related to non-severe impairments, and (3) failed to consider the combined effects of all of her impairments. [ECF No. 16, at 9–22.]

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do de-spite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe,"

5

and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

### 1. The RFC Did Not Properly Account for Claimant's Bathroom Breaks

Claimant first argues that the ALJ's failure to make an explicit finding regarding the frequency and duration of her bathroom breaks in formulating her RFC constitutes an error necessitating remand. [ECF No. 16, at 9–10.] The Court agrees. The ALJ determined that during the relevant period, Claimant's severe impairments included IBS. (R. 14.) The ALJ then accommodated Claimant's IBS by limiting her to "work which would allow ready access to a restroom." (R. 28). But this vague limitation fails to address a variety of factors that necessarily affect Claimant's RFC, namely the frequency and duration of Claimant's bathroom breaks. Claimant testified that, during the relevant period, her IBS controlled every part of her life; she constantly worried about being near a bathroom. (R. 63.) She stated that on a good day, she needed to use the bathroom a minimum of three times a day, and on a bad day, upwards of ten times a day. (*Id.*) She experienced these "bad days" at least three times a week. (*Id.*) Additionally, the record is replete with further complaints of persistent and recurrent diarrhea that caused her to go to the bathroom an inordinate number of times per day. (*See, e.g.*, R. 490, 507, 722–23, 732, 890, 993, 1096, 1380-82, 1084, 1375.) In March 2009, Claimant told her gastroenterologist, Gregory Gambla, D.O., that her IBS symptoms made her feel as though she was a prisoner in her own home. (R. 1381.) Dr. Gambla opined in September 2013 that

6

Claimant's diarrhea and abdominal pain "might cause problems for a full workday on occasion." (R. 1402.)

Despite this evidence and testimony, the ALJ failed to account for Claimant's potential need to take such frequent and unscheduled breaks in formulating the RFC or to further develop Claimant's testimony to determine the length of such bathroom breaks. Indeed, "ready access to a bathroom is distinct from the question of whether a claimant needs (a) unexpected bathroom breaks . . . and/or (b) bathroom breaks that may exceed the number or duration of normal breaks during the workday." *Ledesma v. Berryhill*, 2017 WL 2347181, at *5 (C.D. Cal. May 30, 2017) (citation omitted); *see also Shewmake v. Colvin*, No. 15 CV 6734, 2016 WL 6948380, at *12 (N.D. Ill. Nov. 28, 2016) ("[T]he issue with diarrhea and bathroom breaks is not the pace that one can work; instead, it is the number of breaks and the length of each break."). The VE testified that if an individual required unscheduled bathroom breaks at the frequency that Claimant testified to, and if those breaks took anywhere from ten to twenty minutes,[4] employment would be precluded, as such circumstances would "exceed employer tolerances for routine rest and break periods." (R. 77.) The issue of the frequency and duration of Claimant's bathroom breaks, therefore, is highly relevant to the denial of benefits. *See Durr-Irving v. Colvin*, 600 F. App'x 998, 1003 (7th Cir. 2015) (finding evidence of urinary incontinence "highly relevant" where a VE testified that a person who must use the restroom more than once an hour would be unable to perform the few jobs that met the ALJ's assessment of an applicant's RFC); *Seals v. Berryhill*, No. 16 CV 01975, 2017 WL 2416293, at *5 (S.D. Ind. June 5, 2017).

Given the importance of this issue in determining whether Claimant truly is able perform her past work as a customer service representative, the Court finds that the ALJ's failure to

---

[4] The Court notes that, at her September 2011 hearing, Claimant testified that each bathroom break can last up to ten minutes. (R. 111.)

7

determine the frequency and duration of Claimant's required bathroom breaks and the practical workday limitations resulting therefrom is an error requiring remand. *See, e.g., Rasmussen v. Astrue*, No. 10 C 2344, 2011 WL 1807019, at *11 (N.D. Ill. May 6, 2011) (ALJ failed to determine the frequency or length of the time the plaintiff would have to spend in the bathroom, and therefore failed to develop an RFC that was "expressed in terms of work-related functions"); *Sikorski v. Berryhill*, 690 F. App'x 429, 433 (7th Cir. 2017) (remanding because the ALJ "made no finding regarding the required length of [the plaintiff's] bathroom breaks," and therefore the VE was not provided with a "complete picture" of the plaintiff's RFC); *Shewmake*, 2016 WL 6948380, at *11–12; *Spaulding v. Astrue*, 702 F. Supp. 2d 983, 995–96 (N.D. Ill. 2010). On remand, the ALJ, based upon all of the medical and testimonial evidence, shall determine the amount and length of breaks Claimant will require during a workday and include such information in Claimant's RFC and the hypotheticals posed to the VE.

### 2. The ALJ Failed to Consider the Impact of Claimant's Non-Severe Impairments

Next, Claimant argues that the ALJ failed to include in his RFC assessment functional restrictions that were produced by her medically determinable non-severe impairments of depression, anxiety, and migraine headaches. The ALJ concluded that Claimant's depression and anxiety were non-severe impairments because they caused "no more than mild limitations in the claimant's ability to perform activities of daily living, in social functioning, or with regard to concentration, persistence, or pace." (R. 14.) But the ALJ seemed to ignore this finding in crafting the RFC. Aside from acknowledging that Claimant suffered from anxiety and depression, the ALJ provided no explanation of any resulting limitation, nor did he explain the

8

reasons why these non-severe impairments did not require any limitations on Claimant's mental functioning.[5]

The Commissioner concedes that the ALJ did not consider Claimant's depression and anxiety in assessing her RFC, but argues that "any error by the ALJ was harmless given the paucity of mental-impairment-related limitations during the relevant time period in the record." [ECF No. 24, at 6–7.] The Court rejects this argument. A failure to fully consider the impact of non-severe impairments requires reversal. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). "Regardless of whether the ALJ believed Claimant's mental impairments were severe or non-severe, he should have considered her depression and anxiety when crafting the RFC." *Clark v. Colvin*, No. 15 C 2501, 2016 WL 6476543, at *4–5 (N.D. Ill. Nov. 2, 2016). On remand, the ALJ must explain what effect, if any, Claimant's mild limitations in mental functioning had on his RFC. *See Plump v. Colvin*, 2013 WL 2425574, at * 13 (N.D. Ind. June 3, 2013).

### 3.  The ALJ Did Not Adequately Address the Aggregate Effect of Claimant's Impairments

Claimant's final objection to the ALJ's RFC analysis is that the ALJ failed to consider her impairments in combination. Again, the Court agrees with Claimant. "[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (citing 20 C.F.R. § 404.1523); *see also Golembiewski*, 322 F.3d at 918 ("[T]he ALJ needed to consider the *aggregate* effect of this entire constellation of ailments-including those impairments that in isolation are not severe.") (emphasis in original). The ALJ did not follow this directive here.

---

[5] Notably, the first ALJ found that Claimant had mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace. (R. 142, 168.) That ALJ also accommodated Claimant's mental impairments by limiting her to 2-3 step simple, repeated, routine tasks with no public contact and no more than occasional contact with co-workers and supervisors. (R. 143, 169.)

9

The Court particularly is troubled by the ALJ's failure to consider how Claimant's mental impairments may have aggravated her IBS and vice versa. Claimant has offered ample testimony describing the interplay between her depression and anxiety and her IBS. For example, at the October 2015 hearing, Claimant testified that her IBS "controlled every part of [her] life." (R. 63.) At her prior hearings before the first ALJ, Claimant testified that she experiences panic attacks a few times a month, and stated that her IBS affects everything she does and it has caused her a great deal of anxiety. (R. 86, 90, 113.) Claimant testified that her anxiety makes the IBS worse, and the IBS makes her anxiety worse. (R. 86.) She experiences anxiety every time she leaves the house, worrying about whether she would be able to make it to the bathroom right away. (*Id.*) She further stated that her depression, anxiety, and IBS make it hard for her to go out and do "any normal thing that normal people do." (R. 90.) Claimant testified that she is often unable to take her son places alone; she has to have another person with them who would be able to watch her son in case her IBS symptoms cause her to spend long periods of time in the bathroom. (R. 91.)

The Court notes that it is well-recognized that experiencing the signs and symptoms of IBS can lead to depression or anxiety, and that depression and anxiety can make IBS worse.[6] At her January 2010 consultative examination, the examiner noted that Claimant's anxiety appeared to be, at least in part, stress-related. (R. 992.) Stress and anxiety may trigger episodes or make

---

[6] *See* Mayo Clinic, "Irritable Bowel Syndrome: Overview" https://www.mayoclinic.org/diseases-conditions/irritable-bowel-syndrome/symptoms-causes/syc-20360016; *see also* Cleveland Clinic, "Irritable Bowel Syndrome," https:// www.clevelandclinicmeded.com/medicalpubs/diseasemanagement/gastroenterology/irritable-bowel-syndrome/#bib9 (depression and anxiety are among the most common psychological symptoms associated with IBS); Anxiety and Depression Association of America, "Irritable Bowel Syndrome: Understand the Facts" https://adaa.org/understanding-anxiety/related-illnesses/irritable-bowel-syndrome-ibs ("People with IBS frequently suffer from anxiety and depression, which can worsen symptoms . . . IBS can also make you feel more anxious and depressed.").

symptoms worse.⁷ Because the ALJ did not adequately address the aggregate effects of Claimant's impairments, the RFC determination is not supported by substantial evidence, necessitating remand.

B.  **The Credibility Determination**

Claimant next contends that the ALJ erred in evaluating her subjective symptom statements and credibility. [ECF No. 16, at 15–19.] The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.⁸ Although an ALJ's credibility determination is entitled to special deference, an ALJ still is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination only may be upheld if he gives specific reasons for the determination and provides substantial evidence in support of the determination. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). Because the ALJ's credibility determination implicates the same problem of summarizing but not analyzing the evidence, the Court also finds that the ALJ's adverse credibility determination is not supported by substantial evidence.

---

⁷ *See* American Society of Colon and Rectal Surgeons, "Irritable Bowel Syndrome" https://www.fascrs.org/patients/disease-condition/irritable-bowel-syndrome-0.

⁸ In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued his opinion on January 8, 2016. (R. 30.) Therefore, the ALJ properly applied SSR 96-7p. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

In assessing Claimant's credibility, the ALJ invoked the oft-criticized boilerplate language that "the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely for the reasons explained in this decision." (R. 19.) The Seventh Circuit has cautioned that this phrase is "meaningless," because it fails to explain what the ALJ relied upon in making his determination. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). But the use of the boilerplate language does not automatically undermine an ALJ's credibility determination, if he also points to specific information in the record to support the assessment. *Id.* at 367–68.

In this case, however, after a careful reading of the entire opinion, the Court is not confident that it knows what the ALJ's credibility rationales were or how the ALJ reached them. Again, the majority of the ALJ's opinion is merely a running narrative with very little formal analysis. "Although the Court could speculate based on a few passing phrases and cryptic references, the Court would ultimately be guessing at the precise rationales. Accordingly, the ALJ's opinion fails to comply with the basic precept in Social Security law that an ALJ must build a logical bridge from the evidence to the conclusion." *Underwood v. Colvin*, 2016 WL 7374369, at *2 (N.D. Ill. Dec. 12, 2016) (citing *Berger*, 516 F.3d at 544 (even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build such a logical bridge)).

In sum, the Court concludes that without a sufficient explanation that connects the record evidence to the ALJ's conclusion, the basis for the ALJ's credibility determination is unclear and unreviewable. The Court, however, is not suggesting that the ALJ's credibility determination is incorrect or patently wrong, but only that greater elaboration and explanation is necessary to ensure a full and fair review of the evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir.

2001). On remand, the ALJ should re-evaluate Claimant's subjective symptom statements pursuant to SSR 16-3p, with due regard to the full range of medical evidence, sufficiently articulate how he evaluated that evidence, and then explain the logical bridge from the evidence to his conclusions.

### C. Other Issues

Because the Court remands on the errors identified above, it need not explore in detail the other arguments posited by Claimant on appeal since the analysis would not change the results in this case. The Commissioner, however, should not assume these issues were omitted from the opinion because no error was found.

In conclusion, the Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to use all necessary efforts to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles,* 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *see Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala,* 22 F.3d 687, 693 (7th Cir. 1994).

### IV. CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 16] is granted, and the Commissioner's Motion [ECF No. 23] is denied. The decision of the Commissioner is reversed, and the matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

                                                            _____
                                                            Jeffrey T. Gilbert
                                                            United States Magistrate Judge

Dated:  December 22, 2017